FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 11 2020

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HAROLD R. BERK, et al.          :
           **Plaintiffs**          :
                    :          **No. 1:20-cv-01279-TWT-CCB**

VS.          :
                    :

EQUIFAX INC., et al. .          :
           **Defendants**          :

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE THE PARTIES SETTLEMENT AGREEMENT AND TO STAY ALL DEADLINES

      Plaintiffs Harold R. Berk and Joan S. McClure, Pro Se, herewith Oppose

Defendants' misstyled Motion to Enforce the Parties' Settlement Agreement and to

Stay all Deadlines. The long and the short of Plaintiffs' position is that the parties

have worked to achieve a mutually satisfactory settlement agreement, but they

have not yet reached that goal, and, contrary to Defendants' assertion, there is no

meeting of the minds on all of the essential terms of a Settlement Agreement.

Clearly there is nothing to enforce as the there is not yet a complete Settlement

Agreement.  Plaintiffs' also oppose Defendants' Motion to Stay All Deadlines.

      As to the outstanding deadlines, Plaintiffs, with leave of the Court, filed their

Amended Complaint on May 20, 2020, and they served it on Defendants by email

pursuant to agreement on May 19, 2020. Defendants' Answer is due on June 3,

2020. Plaintiffs served Interrogatories and Requests for Production of Documents on Defendants on May 1, 2020, and their Answers and Responses are due on June 1, 2020.

**Procedural History**

This case was filed on October 7, 2019 in the Eastern District of Pennsylvania. After a Motion to Dismiss on Jurisdictional Grounds was denied, the Court transferred the case to the Northern District of Georgia which docketed it on March 23, 2020.  Defendants were initially represented by Clark Hill PLLC. After the case was docketed in this Court, defendants were represented by King & Spalding LLP, and they filed an Answer to the Complaint on April 1, 2020 and then an Amended Answer on April 15, 2020. The parties filed their Joint Preliminary Report and Discovery Plan on April 30, 2020.  On May 5, 2020 Seyfarth Shaw LLP filed an Entry of Appearance on behalf of Equifax Inc.  On May 6, 2020 Seyfarth Shaw LLP filed an Entry of Appearance for the other two defendants, and on May 11, 2020 King & Spalding LLP withdrew as counsel for defendants.  So, defendants have been represented by three different large law firms in the course of this litigation.

On April 28, 2020, Plaintiffs filed their Motion for Leave to Amend their Complaint, and after defendants stated to Plaintiffs' that they had no opposition to that Motion, and Plaintiffs so noticed the Court, leave to amend was granted on

2

May 18, 2020. Plaintiffs filed their Amended Complaint on May 22, 2020.

**Settlement Negotiations**

The parties began settlement discussions when King & Spalding represented defendants, and settlement discussions occurred during the parties Rule 26(f) conference on April 15, 2020.  Plaintiffs made a written settlement offer on or about May 8, 2020.  On May 12, 2020 they withdrew the original offer and submitted a revised written offer on May 13, 2020.  Exhibit 1. The terms of Plaintiffs' offer were as follows:

> 1.  Equifax will provide us with the identity, including name, address and business type and organization, of all third parties to whom they sent information about us or our property or mortgages in August, 2019 and thereafter through and including May, 2020.
> 2.  Equifax will specify what information about us, including personal and financial information, they provided to any third parties in August, 2019 and thereafter through and including May, 2020.
> 3.  Equifax will pay us $15,000.00 as a flat sum including attorney fees and costs and with no additions.
> 4.  The parties will exchange mutual releases.
> 5.  Plaintiffs will not further pursue their complaint to the Consumer Financial Protection Board and they will not file a Complaint with the Federal Trade Commission.
>
> This offer will remain outstanding until May 25, 2020 at which point it will be null and void if not accepted.

On May 15, 2020 defendants claimed in an email to accept Plaintiffs' offer. Exhibit 2.

But on May 18, 2020 defendants delivered a draft Settlement Agreement which contained material modifications from the Plaintiffs' written offer of May

13, 2020.  Exhibit 3.  It demonstrated that there was no meeting of the minds on the terms of a settlement.

Most importantly, defendants draft stated that they would not deliver to Plaintiffs information on the lenders and third parties to whom they delivered personal and financial information about Plaintiffs until forty-five days after signing the Settlement Agreement and Dismissal of the Action with Prejudice.  So, defendants wanted Plaintiffs to sign a Settlement Agreement and Dismiss this case without disclosure of the third parties to whom Equifax sent Plaintiffs' information.  Based on past history this was unacceptable.

On or about May 12, 2020, Plaintiffs and Eric Barton, defendants' counsel, had a discussion about to whom Equifax sent information about Plaintiffs.  Mr. Barton stated that Equifax had searched their records and only found two, one was Colonial Mortgage that requested a credit report as it was processing a refinance application on Plaintiffs' property in Lewes, Delaware, as is alleged in paragraph 30 of the Complaint.  The other was a "promotional inquiry" from Bayshore Mortgage of Maryland.  Mr. Berk asked what was a "promotional inquiry," and Mr. Barton said he did not know. Plaintiffs did research on Bayshore Mortgage which was located in Timonium, Maryland, and most interesting its webpage said it was not licensed to do mortgage lending in Florida.  See Exhibit 4.   Plaintiffs had written three letters to the CEO and Chief Counsel of Equifax on August 30,

4

2019, September 9, 2016 and September 16, 2016 requesting information on to whom Equifax sent Plaintiffs' information to third parties. Exhibits F, G and H to the Amended Complaint. Mr. Berk's letter of September 9, 2019 was sent by Federal Express to Mark W. Begor, CEO, and John J. Kelly II, Esquire, Chief Legal Officer, and it directed them to preserve all documents and electronic communication regarding this matter noting that their failure to do so could be a ground for sanctions from the court. Exhibit G to the Amended Complaint and attached hereto as Exhibit 5. Mr. Berk spoke to an in-house counsel for Equifax, located in their Atlanta office, Kristin Ziemanski on or about September 30, 2019, and she said she would investigate the matters raised in Exhibits F, G and H. So, here eight months later and after Mr. Barton said he inquired of Equifax as to the identity of the third parties to whom it sent information, Equifax wanted Plaintiffs to believe that the only lender to whom they sent information was a mortgage lender in Maryland that was not licensed to do business in Florida. That certainly did not explain how thirty (30) other lenders were alerted and in 48 hours did contact Plaintiffs at our Port St. Lucie Property about refinancing the mortgage, a refinancing that we had not requested. Equifax claim that they delivered information to only one Maryland lender and no one else is incredible.

Based on this history Plaintiffs were not prepared to sign a Settlement Agreement, dismiss the case and then 45 days later receive some information

which may be grossly incomplete.

Plaintiffs settlement proposal required Equifax to deliver the information identifying the third parties at the time the Settlement Agreement was signed, but Equifax inserted this 45-day delay in providing the information, and this was a material change, unacceptable to Plaintiffs in light of the history of Equifax's non-disclosure and incredible explanations.

Equifax inserted a confidentiality provision, but Plaintiffs' proposal did not provide for confidentiality of the Settlement Agreement. The confidentiality provision was another material modification.

Equifax inserted an indemnity provision whereby Plaintiffs would indemnify Equifax and hold it harmless from any claims by anyone who alleged that they were the transferee or assignee of Plaintiffs' claims, whether or not true. This was another material modification.

Equifax inserted a provision that the Settlement Agreement would be interpreted and enforced under the law of Georgia. The parties had not discussed a choice of law provision, but Plaintiffs wanted the agreement to be interpreted under Florida law, where they are citizens and own the real property that was the subject of thirty (30) refinancing telephone calls in two days.

Equifax inserted a provision that in any proceeding to enforce the Settlement Agreement the prevailing party would be entitled to reasonable attorney fees and

costs, but no such provision had been included in Plaintiffs' proposal, and this was another material change.

Plaintiffs intended the Settlement Agreement to be signed by Equifax and its attorneys to foreclose any claim that counsel did not have authority to bind Equifax as to some term, but Equifax only provided for signature by its attorneys.

All of the above are material changes and demonstrate that, in fact, Equifax did not accept Plaintiffs' proposal of May 13, 2020 despite their counsel's email of May 15, 2020.

There was no meeting of the minds as Equifax did not unconditionally accept Plaintiffs' May 13, 2020 settlement offer, and in fact their draft Settlement Agreement constituted a counteroffer which Plaintiffs have not accepted. Equifax by its Motion to Enforce seeks a court order to enforce a settlement agreement that does not exist. In fact, Equifax even seeks to renegotiate different terms by saying in its Memorandum that it is now willing to delete the confidentiality provision. See footnote 3 of Equifax's Memorandum in Support of their Motion. Equifax cannot unilaterally renegotiate terms in a motion to enforce.

**Law to Apply**

The parties have not come to an agreement whether any potential Settlement Agreement will be interpreted under Florida or Georgia law. There are good reasons for applying Florida law as Plaintiffs are citizens of Florida, reside there,

and the real property proposed for refinancing is located in Florida. Equifax will say Georgia law should apply as its headquarters and principal office are there. Plaintiffs do not think that on the relevant issues there is much difference between Florida and Georgia law. Until the parties agree on which law to apply, the question can remain open.

### There Is No Mutually Agreed Settlement Agreement to Enforce

When a party makes an offer of settlement, the recipient of the offer must accept all of its material terms without modification in order to make the acceptance of the offer into a binding contract or settlement agreement. *Grange Mutual Casualty Co. v. Woodard*, 861 F.3d 1224 (11th Cir. 2017). In *Grange*, the Eleventh Circuit certified several questions to the Supreme Court of Georgia requiring interpretation of certain Georgia statutes dealing with settlements of auto accidents. As to the elements of contract formation, the Eleventh Circuit quoted the Georgia Supreme Court's response on the certified questions: "[T]he common law is well established that (1) the offeror is the master of his or her offer and (2) agreement requires a meeting of the minds on all material terms." *Grange*, 861 F.3d at 1230, *quoting Grange Mutual Casualty Company v. Woodard,* 300 Ga. 848, 797 S.E. 2d 814, 821 (2017). The offeror can specify whatever terms and conditions it desires, and to accept and form a binding agreement, the offeree must accept all material terms as presented by the offeror and have a meeting of the

8

minds on each of those material terms.

As discussed above, Equifax did not accept all of the material terms in Plaintiffs' offer and in fact imposed additional material terms to which Plaintiffs have not agreed. There was no meeting of the minds and agreement on all of the terms of Plaintiffs' offer. But Equifax filed a Motion to Enforce a non-existent agreement and then proposed to change some of the terms within its own Memorandum, such as its proposed withdrawal of the confidentiality provision. See footnote 3 of Equifax's Memorandum. Equifax is negotiating while seeking to enforce. As the Eleventh Circuit stated in *Specialized Trans. v. Nestle Waters, N.A.* 356 F. App'x. 221, 229 (11th Cir. 2009):

> An agreement to agree in the future is an "agreement for which there is no remedy and which is thus unenforceable." CSX Transp., Inc. v. Prof'l Transp., Inc., 467 F.Supp.2d 1333, 1338 (M.D.Fla. 2006). Preliminary negotiations are different from the contract itself, and there is no meeting of the minds if the parties are "merely negotiating as to the terms of an agreement to be entered into." Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498, 503 (1927) (per curiam) (quotation and citation omitted).

There is no final agreement enforceable by court order when the parties are still negotiating over essential terms. *R.O. Parsons v. Orthalliance Inc.,* 130 Fed Appx. 353 (11th Cir. 2005). As the court stated in *Rsui Indem. Co. v. Desai,* No. 8:13-cv-2629-T-30TGW (M.D. Fla. Nov. 8, 2016) at 26-27:

> [There was](no enforceable settlement agreement even though all parties and the mediator had signed a settlement term sheet where

there were further negotiations of a final settlement); see *Tomlinson v. Landers*, 2009 WL 1117399 (M.D. Fla. 2009) (party's removal of language and proposing second release to plaintiff was evidence that negotiations were ongoing and parties had not reached a settlement agreement to an essential term); see also *Wisekal v. Laboratory Corp. of America*, 2016 WL 4154781 (S.D. Fla. 2016) (despite parties phone call to chambers and filing of notice that the parties had reached settlement, no enforceable agreement where parties continued to negotiate essential terms and could not reach an agreement as to those terms); *Williams v. Ingram, supra* ("incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement"); *Suggs v. Defranco's, Inc., supra*, 626 So.2d at 1101 (no enforceable agreement where essential terms left for future negotiations).

Here Equifax has jumped the gun seeking enforcement of a settlement agreement that was not finalized and where the parties had major negotiating disputes. For example, Plaintiffs sought an indemnity and hold harmless provision whereby Equifax would indemnify and hold Plaintiffs harmless in any case involving identity theft affecting Plaintiffs if the perpetrator had gained information about Plaintiffs from Equifax. See Exhibit 6. Plaintiffs had alleged in their Amended Complaint at paragraphs 42, 60, 66, 68, and 118 that as a direct result of Equifax distribution of Plaintiffs' information to unknown persons, Plaintiffs are likely to be subject to identity theft causing them loss and damage for which Equifax should be responsible. But Equifax strenuously objected to including this indemnity provision even though it was fundamental to Plaintiffs' reason for bringing this litigation. Mr. Berk sent an email to counsel for Equifax on May 22, 2020 asking why Equifax was so opposed to providing an indemnity

for identity theft if caused by their mass release of our information.  Exhibit 7.

Counsel for Equifax never responded substantively.  That dispute was not resolved

at the time Equifax filed its Motion to Enforce.

Plaintiffs proposed to insert language in paragraph 2 of Equifax's draft

Settlement Agreement which would state,  "Equifax will also provide Plaintiffs

with the identity including name, address, and business type, of all third parties

who were able to access information about Plaintiffs through one or more of the

products described in the Exhibits to the Complaint."  Again, Equifax strongly

objected to adding this provision.  But reading Exhibits C, D and E to the

Complaint describing some of Equifax's "products" that they sell to lenders leaves

the impression that Equifax has, for some customers, rented out its extensive

database of information so that the prospective lenders can search the Equifax

databases without Equifax's involvement or minimal involvement.  Plaintiffs

submit that such a practice, using Equifax products, violates FCRA, 15 U.S.C.

§1681b.

Equifax decided that rather than try to negotiate these points of dispute with

Plaintiffs, they would cut off negotiations by falsely claiming that the parties had

agreed on all essential terms, when they had not,  and therefore sought enforcement

of whatever they deemed the final agreement to be.  Equifax stated on page 1 of

their Motion to Enforce "that all essential terms of the settlement agreement were

11

reached by the parties," but that was a false representation to the Court as the parties were then vigorously disputing Plaintiffs added language to paragraph 2 identifying Equifax customers given access to the Equifax databases and the indemnity provision Plaintiffs sought to add as a new paragraph 7 to protect them from identity theft: a major remedy and purpose of this litigation.

Rule 3.3 of the Georgia Rules of Professional Conduct provides:
RULE 3.3 CANDOR TOWARD THE TRIBUNAL
a. A lawyer shall not knowingly:
   1. make a false statement of material fact or law to a tribunal;

Equifax is trying to use their Motion to Enforce to cut-off negotiations on provisions that Plaintiffs require but which Equifax refuses, and this is an improper use of a Motion to Enforce as it requires a false representation of finality of a settlement agreement that is still being negotiated.

Equifax's Motion to Enforce the Non-Existent final Settlement Agreement should be denied.

**There is No Basis for a Stay of All Deadlines**

Equifax has moved for a complete stay of all deadlines in this case, but I did not see any argument to support their request for a Stay in their Memorandum. Plaintiffs oppose the entry of a Stay as Equifax has not offered any argument to support that drastic step.  Equifax has to answer the Amended Complaint by June

3, 2020 and answer and respond to the Interrogatories and Requests for Production by June 1, 2020. If they need a time extension, they should ask for one, but they have not done so.

Since there is no final Settlement Agreement to enforce, there is no reason to grant a general stay, and Equifax has not offered one. Equifax's Motion for a Stay should be denied.

Respectfully submitted,

*Harold R. Berk*

Harold R. Berk, Pro Se
Joan S. McClure, Pro Se
Plaintiffs
17000 SW Ambrose Way
Port St. Lucie, FL 34986
215-896-2882
haroldberk@gmail.com
PA ID. No. 22566
            and
150 N. Radnor Chester Road
Suite F200, #842
Radnor, PA 19087

June 1, 2020

## CERTIFICATE OF SERVICE

I, Harold R. Berk, Plaintiff pro se herein, have on this June 1, 2020, served a copy of the foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion to Enforce Settlement and Motion for a Stay of all Deadlines to the following counsel for the defendants by Email pursuant to an agreement of counsel for the parties as follows:

Eric F. Barton, Esquire
Seyfarth Shaw LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA 30309
EBarton@seyfarth.com

_/s/  Harold R. Berk_
Harold R. Berk

June 1, 2020

# EXHIBIT 1

 Gmail

**Harold Berk <haroldberk@gmail.com>**

---

## Offer of Settlement
1 message

---

**Harold Berk** <haroldberk@gmail.com>
To: "Barton, Eric" <ebarton@seyfarth.com>
Cc: Joan McClure <joan.s.mcclure@gmail.com>

Wed, May 13, 2020 at 12:21 PM

FOR SETTLEMENT PURPOSES ONLY

We are prepared to settle the case we brought against Equifax on the following terms:

1. Equifax will provide us with the identity, including name, address and business type and organization, of all third parties to whom they sent information about us or our property or mortgages in August, 2019 and thereafter through and including May, 2020.

2. Equifax will specify what information about us, including personal and financial information, they provided to any third parties in August, 2019 and thereafter through and including May, 2020.

3. Equifax will pay us $15,000.00 as a flat sum including attorney fees and costs and with no additions.

4. The parties will exchange mutual releases.

5. Plaintiffs will not further pursue their complaint to the Consumer Financial Protection Board and they will not file a Complaint with the Federal Trade Commission.

This offer will remain outstanding until May 25, 2020 at which point it will be null and void if not accepted.

Harold R. Berk, Esquire
150 North Radnor Chester Road
Suite F200, #842
Radnor, PA 19087
mobile: 215-896-2882
www.hrberkesquire.com

17000 SW Ambrose Way
Port St. Lucie, FL 34986

# EXHIBIT 2

 **Gmail**

**Harold Berk <haroldberk@gmail.com>**

## Re: Offer of Settlement
1 message

**Harold Berk** <haroldberk@gmail.com>    Thu, May 14, 2020 at 1:58 PM
To: "Barton, Eric" <EBarton@seyfarth.com>
Cc: Joan McClure <joan.s.mcclure@gmail.com>

Eric,

That is great.  We look forward to receiving your draft.

Harold R. Berk, Esquire
150 North Radnor Chester Road
Suite F200, #842
Radnor, PA 19087
mobile:  215-896-2882
www.hrberkesquire.com

17000 SW Ambrose Way
Port St. Lucie, FL 34986

On Thu, May 14, 2020 at 1:53 PM Barton, Eric <EBarton@seyfarth.com> wrote:

**FRE 408 - SETTLEMENT COMMUNICATION**

I'm pleased to report that Equifax accepts the settlement terms set forth in your May 13th e-mail below.

While Equifax gathers together the information you have requested and we draft/finalize the formal settlement agreement, I would like to go ahead and notify the Court that we've reached a settlement in principle and stay all deadlines so we can get this wrapped up.   I'll send you a proposed submission shortly.

Thank you.

**Eric Barton** | Partner | Seyfarth Shaw LLP
1075 Peachtree Street, N.E. | Suite 2500 | Atlanta, Georgia 30309-3958
Direct: +1-404-885-6772 | Fax: +1-404-892-7056
ebarton@seyfarth.com | www.seyfarth.com

 Seyfarth

# EXHIBIT 3

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into by Harold R. Berk and Joan S. McClure ("Plaintiffs") and Defendants Equifax Inc., Equifax Information Services LLC, and Equifax Mortgage Information Services (collectively, "Equifax") as of the date of execution below. Plaintiffs and Equifax are collectively referred to herein as the "Parties."

### FACTS

Plaintiffs filed suit against Equifax in the United States District Court, Northern District of Georgia, Atlanta Division, Case No. No. 1:20-cv-01279-TWT-CCB (the "Lawsuit"). In their Lawsuit, Plaintiffs allege that Equifax is liable for, among other things, violations of the Fair Credit Reporting Act concerning the distribution of Plaintiffs' personal information to third-parties. Equifax denies any wrongdoing.

The Parties now desire to memorialize the settlement in principle that they reached on May 13, 2020, and resolve all disputes, asserted or unasserted, arising out of any acts, failures to act, omissions, misrepresentations, facts, events, transactions, or occurrences described in the Lawsuit or related to the distribution of Plaintiffs' personal information to third-parties existing at the time of the execution of this Agreement.

NOW THEREFORE, in consideration of the mutual promises, terms, and conditions contained herein, and for other good and valuable consideration hereby deemed received, the Parties agree as follows:

### TERMS OF AGREEMENT

1.      Equifax agrees to pay Plaintiffs the total settlement amount of Fifteen Thousand Dollars ($15,000.00). The settlement check shall be made payable to "Harold R. Berk and Joan

S. McClure" and is conditioned upon Plaintiffs' execution of this Agreement, Equifax's receipt of fully completed Forms W-9 for both Plaintiffs, and Plaintiffs' dismissal of the Lawsuit with prejudice.

2.      Within forty-five days of execution of this Agreement by all Parties, Equifax agrees to provide Plaintiffs with the identity, including name, address, and business type, of all third parties to whom it sent information about Plaintiffs or their property or mortgages between August 2019 and May 2020.  Equifax also will specify what information about Plaintiffs, including personal and financial information, it provided to any third parties between August 2019 and May 2020. At the time Equifax produces this information to Plaintiffs, a representative of Equifax will execute a sworn verification affirming that the information provided is true and correct.

3.      Plaintiffs agree not to further pursue their complaint to the Consumer Financial Protection Board, which they will dismiss/withdraw within five days of execution of this Agreement by all Parties.  Plaintiffs further agree not to file a Complaint with the Federal Trade Commission.

4.      Within five days of execution of this Agreement by all Parties, Plaintiffs agree to file a Motion to Dismiss with Prejudice and Proposed Order and/or Stipulation of Dismissal with Prejudice and Proposed Order, whichever is necessary to effect dismissal with prejudice of the Lawsuit. Plaintiffs further agree to provide to Equifax's attorneys copies of all such papers.

5.      Except for the rights and obligations created by this Agreement, Plaintiffs, their heirs, agents, privies, attorneys, insurance carriers, executors, administrators, and successors and assigns, hereby release and forever discharge Equifax and its agents, affiliates, servants, employees, officers, directors, shareholders, attorneys, privies, insurance carriers, predecessors, parents, subsidiaries, successors, and assigns from any and all debts, controversies, claims,

demands, damages, actions, causes of action, or suits of any kind or nature, including by contract, tort, statute, or otherwise, known or unknown, now existing and up to the date on which Plaintiffs sign this Agreement including, without limitation, any obligations under the Fair Credit Reporting Act. This Agreement necessarily includes, but is not limited to, any and all claims, demands, damages, actions, causes of action, or suits that are based directly or indirectly upon facts, events, transactions, or occurrences related to or alleged, or embraced by the Lawsuit, could have been alleged in the lawsuit or concerning the distribution of Plaintiffs' personal information to third-parties.

6.      Except for the rights and obligations created by this Agreement, Equifax and its agents, affiliates, servants, employees, officers, directors, shareholders, attorneys, privies, insurance carriers, predecessors, parents, subsidiaries, successors, and assigns, hereby release and forever discharge Plaintiffs, their heirs, agents, privies, attorneys, insurance carriers, executors, administrators, and successors and assigns, from any and all debts, controversies, claims, demands, damages, actions, causes of action, or suits of any kind or nature, including by contract, tort, statute, or otherwise, known or unknown, now existing and up to the date on which Equifax signs this Agreement.

7.      The Parties further agree that this Agreement has been fully read and understood by them and that all of them have received independent legal advice from their respective attorneys as to the effect and import of its provisions. The Parties additionally agree that this Agreement is being entered into for the express purpose and intention of making and entering into a full and final compromise, adjustment, and settlement of all claims which were or could have been asserted in the Lawsuit, whether or not referred to therein.

8.    Plaintiffs warrant and represent that there has been no assignment, sale, or transfer, by operation of law or otherwise, of any claim, right, or interest released herein. Plaintiffs agree to indemnify, defend, and hold harmless Equifax from any claim, liability, or expense which may be incurred as a result of the assertion of any such claim, right, or interest by any person by reason of any such assignment, sale, or transfer.

9.    This Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of Equifax of any claim, or any fault or liability, or damages whatsoever. Equifax denies any and all wrongdoing of any kind whatsoever in connection with the Lawsuit and does not concede any infirmity in the defenses intended to assert. The Parties have reached the Agreement reflected herein in order to avoid further expense, inconvenience, and delay, and to dispose of extremely expensive, burdensome, and protracted litigation.

10.    The Parties agree that this Agreement constitutes a good faith settlement of the Lawsuit and acknowledge that it is entered into freely and voluntarily.

11.    Unless otherwise required by law or court order, Plaintiffs agree to keep this Agreement confidential except when necessary to assert a due legal right, or when their accountants or attorneys are privy to its contents in confidential communications. In the event Plaintiffs are forced to file this Agreement with a court, they shall do so under seal so that the contents are not revealed beyond disclosure to duly authorized court personnel, such as judges and court clerks, or to taxing authorities, if necessary, or as otherwise ordered by the Court.

12.    This Agreement constitutes the sole and entire agreement between Plaintiffs and Equifax and supersedes all prior agreements, negotiations, and discussions between the Parties with respect to the subject matter covered in it. Plaintiffs and Equifax all acknowledge that, in entering into this Agreement, they are not relying upon any representations or warranties made by

anyone other than those terms and provisions expressly set forth in this Agreement. It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified, or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of Plaintiffs and Defendant. The Parties further acknowledge and agree that they will make no claims, at any time or place, that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever.

13.     This Agreement is being made in and shall be deemed to be performed in the State of Georgia and shall be governed by, construed, and enforced in accordance with the laws of the State of Georgia without giving effect to the provisions, policies, or principles thereof relating to choice of law or conflict of laws. The Parties hereby consent to the jurisdiction of the federal courts located in the State of Georgia with respect to any dispute relating to or arising out of this Agreement.

14.     In any action to enforce the terms of this Agreement, including any action to recover damages for any violations of it, including the confidentiality provisions of paragraph 11 above, the prevailing party shall be entitled to recover its reasonable attorneys' fees and disbursements in addition to costs of suit.

15.     Should any provision of this Agreement be held invalid or illegal, such invalidity or illegality shall not invalidate the whole of this Agreement, but rather the Agreement shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

16.     The Parties have the requisite authority to enter into this agreement on their own behalf.

17.     This Agreement may be executed in counterparts signed on varying dates.

IN WITNESS WHEREOF, this Agreement is executed as of the date and year first above indicated.


By: _____    Date: _____
       Plaintiff Harold R. Berk


By: _____    Date: _____
       Plaintiff Joan S. McClure


EQUIFAX INC., EQUIFAX INFORMATION
SERVICES LLC, EQUIFAX MORTGAGE
INFORMATION SERVICES LLC


By: _____    Date: _____
      Attorneys for Defendants

# EXHIBIT 4



 MENU

About Us

We have built a strong reputation as an outstanding Mortgage Lender, serving the needs of real estate professionals, builde and individual homebuyers throughout the country since 2001.

We're a full service Mortgage Lender with an experienced staff offering expertise in every area of mortgage lending...from purchase to refinance to construction loans. We have access to a full range of mortgage sources and all of our lending specialists are dedicated to finding the right loan-with the best rates, terms and costs-to meet your unique needs. But that's just the beginning of our service. Throughout the lending process, we provide regular loan updates and progress reports so you always know the status of your loan. We also offer a special Mortgage Manager service if you are considering refinancir your mortgage.

And, now it's our pleasure to offer all of our exceptional mortgage services online. Through us you not only have access to the best loans available in the marketplace, but you can also review loan alternatives, and even apply for your loan, at your convenience, online - 24 hours a day.

Thank you for visiting our website. We look forward to working with you!

Apply now for a better mortgage experience through Bayshore Mortgage and Fundinç

Apply Now

About Us

We have built a strong reputation as an outstanding Mortgage Lender, serving the needs of real estate professionals, builders and individual homebuyers throughout the country since 2001.

We're a full service Mortgage Lender with an experienced staff offering expertise in every area of mortgage lending...from purchase to refinance to construction loans. We have access to a full range of mortgage sources and all of our lending specialists are dedicated to finding the right loan-with the best rates, terms and costs-to meet your unique needs. But that's just the beginning of our service. Throughout the lending process, we provide regular loan updates and progress reports so you always know the status of your loan. We also offer a special Mortgage Manager service if you are considering refinancing your mortgage.

And, now it's our pleasure to offer all of our exceptional mortgage services online. Through us you not only have access to the best loans available in the marketplace, but you can also review loan alternatives, and even apply for your loan, at your convenience, online - 24 hours a day.

Thank you for visiting our website. We look forward to working with you!

---

## Apply now for a better mortgage experience through Bayshore Mortgage and Funding

Apply Now

- **COMPANY STATE LICENSES**

- **PRIVACY POLICY**

NMLS    |    FAIR LENDING    |    FAIR HOUSING

Registered with the Nationwide Mortgage Licensing System & Registry under NMLS ID # 196858.

Licensed in the State of Maryland by the Maryland Dept. of Labor, Licensing, and Regulation, Commissioner of Financial Regulation, License # 18902.

Licensed in the State of Virginia by the Virginia State Corporation Commission, License # MC-5462.

Licensed in the District of Columbia by the Dept. of Insurance, Securities, & Banking, License # MLB196858.

Licensed by the N.J Department of Banking and Insurance

Licensed by the State of Oklahoma Department of Consumer Credit #ML012199

Figure: 7 TAC §81.200(c)

CONSUMERS WISHING TO FILE A COMPLAINT AGAINST A MORTGAGE BANKER OR A LICENSED MORTGAGE BANKER RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD COMPLETE AND SEND A COMPLAINT FORM TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. COMPLAINT FORMS AND INSTRUCTIONS MAY BE OBTAINED FROM THE DEPARTMENT'S WEBSITE AT WWW.SML.TEXAS.GOV. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.

THE DEPARTMENT MAINTAINS A RECOVERY FUND TO MAKE PAYMENTS OF CERTAIN ACTUAL OUT OF POCKET DAMAGES SUSTAINED BY BORROWERS CAUSED BY ACTS OF LICENSED MORTGAGE BANKER RESIDENTIAL MORTGAGE LOAN ORIGINATORS. A WRITTEN APPLICATION FOR REIMBURSEMENT FROM THE RECOVERY FUND MUST BE FILED WITH AND INVESTIGATED BY THE DEPARTMENT PRIOR TO THE PAYMENT OF A CLAIM. FOR MORE INFORMATION ABOUT THE RECOVERY FUND, PLEASE CONSULT THE DEPARTMENT'S WEBSITE AT WWW.SML.TEXAS.GOV.

NMLS Consumer Access ( http://www.nmlsconsumeraccess.org)

# EXHIBIT 5

**HAROLD R. BERK, ESQUIRE**
**Attorney at Law**
150 N. Radnor Chester Road
Suite F200, #842
Radnor, PA 19087
215-896-2882 mobile
haroldberk@gmail.com
http://www.hrberkesquire.com

September 9, 2019

VIA FEDERAL EXPRESS

Mark W. Begor, CEO
Equifax Inc.
1550 Peachtree Street, N.W.
Atlanta, Georgia 30309

John J. Kelly III, Esquire
Chief Legal Officer
Equifax Inc.
1550 Peachtree Street, N.W.
Atlanta, Georgia 30309

Illegal Operation of Equifax EMortgage
Violating the Fair Credit Reporting Act,
15 U.S.C. §1681 et seq and other statutes and state common law

Dear Messrs. Begor and Kelly,

On August 30, 2019 I sent both of you a letter via Federal Express, which you received on September 3, 2019, concerning the events starting on August 29, 2019 when I received 30 unsolicited telephone calls from mortgage brokers regarding a refinancing of our real estate at 17000 SW Ambrose Way, Port St Lucie, FL 34986 (the "PSL Property"). This onslaught occurred even though we have not sought a refinancing of the mortgage on the PSL property from anyone. I have not received any response from you or anyone at Equifax concerning my August 30, 2019 letter to both of you.

We have not sought a refinancing of the mortgage on our real estate here in Port St. Lucie, so I inquired of these mortgage brokers why they were calling us and where did they get our property information, loan balance and telephone number. They said it was provided by your company Equifax. On my investigation I see you have an entity or system called EMortgage which your website says that it is designed to TARGET potential borrowers.

We have not sought a refinancing of the mortgage on the PSL property now held by

Wells Fargo. We are in the process of refinancing the mortgage on our property at 207 Samantha Drive, Lewes, DE through Colonial Mortgage, but Colonial denies that they were the source of the incredible onslaught of telephone calls I started receiving yesterday from mortgage brokers. Interestingly, I arrived at our PSL property on August 28, 2019, but there were no telephone calls from any mortgage brokers that day. Instead the fusillade of calls commenced on August 29, 2019, obviously stimulated by a third-party notice to these numerous brokers that we were a good target for a potential refinancing. From what these brokers told me, Equifax was the source of the information they were provided about an opportunity for them to refinance our property in PSL.

Equifax had no authority to share information regarding our property, loan balance, property address and telephone number with mortgage lenders with whom we had no relationship and no interest. But in order to "TARGET" borrowers as your website says, you decided to launch this onslaught of telephone harassment.

Since I was here at our property in Port St Lucie preparing for the arrival of Hurricane Dorian which was predicted to have a direct hit on this area as a Category 4 hurricane with sustained winds of 150 mph, I deeply resent your release of an onslaught of mortgage brokers to call me while I was attempting to secure our property. Luckily for us Dorian turned and went up the Florida coast.

Your EMortgage system used to "Target" borrowers is illegal and in violation of various federal statutes. It is an invasion of privacy where you disclose without authorization our current mortgage terms, the loan balance, our identity and our telephone number and address. Equifax apparently encouraged this horde of mortgage brokers to call us.

Apparently, Equifax receives some payment from these mortgage brokers if they conclude a refinancing with us that we did not seek and which was initiated by Equifax.

The conduct of Equifax in providing information from our credit reports to these 30 mortgage brokers with whom we have no relationship or interest was clearly in violation of 15 U.S.C. §1681b, the Fair Credit Reporting Act. We did not authorize any disclosures by Equifax or anyone else concerning the current mortgage loan on the PSL property, its terms or whether it was a candidate for refinancing. Equifax has violated 15 U.S.C. §1681n for its willful noncompliance and 15 U.S.C. §1681o for its negligent noncompliance. This is also an invasion of privacy under state law. An action may be filed against Equifax regardless of the amount in controversy, and any appropriate federal district court has jurisdiction of such claims as well as any other court of competent jurisdiction. 15 U.S.C.§1681p

Please be advised that we intend to promptly sue Equifax Inc. for this serious harassment and violation of federal statutes. I previously successfully sued JP Morgan Chase on similar invasion of privacy grounds in two reported decisions, and I will be pleased to sue you to stop this harassment and unauthorized disclosure of information if this matter cannot be amicably resolved. We are hopeful that an amicable resolution can be achieved, but that is up to you.

**If you wish to discuss this matter, please contact me or have someone in your**

2

organization contact me as soon as possible. If not, I will have you served with a Summons and Complaint which will be filed in federal court by no later than September 19, 2019. The Complaint will be filed against Equifax, Inc. and any of its subsidiaries involved in this matter as may be determined through investigation and discovery.

You are herewith notified to preserve all papers, records, electronic records, communications, credit reports, telephone and email communications and any and all other documents, whether in paper or electronic form, which relate to the claims set forth in this letter. Your failure to preserve the records despite notice will be grounds for sanctions by the court on our application.

I should note that for many years I paid Equifax to monitor my credit and all I got in return was the massive data breach which disclosed my personal information. So, after being your customer I am now your victim.

Sincerely,

Harold R. Berk
Attorney at Law

3

# EXHIBIT 6

occurrences related to or alleged, or embraced by the Lawsuit, which could have been alleged in the ~~lawsuit~~Lawsuit or concerning the distribution of Plaintiffs' personal and financial information to third-parties.

6.    Except for the rights and obligations created by this Agreement, Equifax and its agents, affiliates, servants, employees, officers, directors, shareholders, attorneys, privies, insurance carriers, predecessors, parents, subsidiaries, successors, and assigns, hereby release and forever discharge Plaintiffs, their heirs, agents, privies, attorneys, insurance carriers, executors, administrators, and successors and assigns, from any and all debts, controversies, claims, demands, damages, actions, causes of action, or suits of any kind or nature, including by contract, tort, statute, or otherwise, known or unknown, now existing and up to the date on which Equifax signs this Agreement.

7.    Equifax further agrees that in the event that any third party that received personal and financial information about the Plaintiffs from Equifax, either directly or indirectly, or any agent, employee, officer, or assignee or purchaser of Plaintiffs' personal and financial information engages in identity theft of Plaintiffs and uses the Plaintiffs' personal and financial information to obtain credit, benefits, goods, services, governmental benefits, cash, lines of credit, mortgage loans or any other asset or thing of value (the "Products of Identity Theft"), Equifax agrees to indemnify, defend and hold Plaintiffs harmless from any and all damage, claims, or litigation that Plaintiffs may suffer or need to initiate as a result of the use of the Products of Identity Theft by any third-party, and Equifax agrees to pay all reasonable attorney fees and costs to defend any such claim or to prosecute claims against any third-parties who obtained the Products of Identity Theft based upon or utilizing the Plaintiffs' personal and financial information provided by Equifax.

# EXHIBIT 7

 Gmail

**Harold Berk <haroldberk@gmail.com>**

## Settlement or Not
1 message

**Harold Berk** <haroldberk@gmail.com>                                    Fri, May 22, 2020 at 7:08 AM
To: "Barton, Eric" <ebarton@seyfarth.com>, "Blecher, Stacey" <SBlecher@seyfarth.com>
Cc: Joan McClure <joan.s.mcclure@gmail.com>

Eric,

Please explain to us why Equifax is so opposed to giving us an indemnity and hold harmless for any damage caused by identity theft undertaken by one of the third parties to whom Equifax has provided our information or their employees, officers, assignees etc.?  I am sure the judge will be eager to know the answer as well.

My assumption is that Equifax leases access to its databases to third parties paying a fee and it has no idea who is obtaining what information and is therefore very concerned about myriad parties using the Equifax obtained information to perpetrate identity theft.

Since you want to heat things up instead of settling, I have identified a number of my colleagues in Atlanta who would make good co-counsel to assist in completing the negotiation or pursuing litigation including the RICO claims.  Several of them are in practice groups focusing on data breaches and cybersecurity.

Harold R. Berk, Esquire
150 North Radnor Chester Road
Suite F200, #842
Radnor, PA 19087
mobile:  215-896-2882
www.hrberkesquire.com

17000 SW Ambrose Way
Port St. Lucie, FL 34986

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **HAROLD R. BERK, et al.** | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:20-cv-01279-TWT-CCB** |
| **VS.** | : | |
| | : | |
| **EQUIFAX INC., et al. .** | : | |
| **Defendants** | : | |

## PROPOSED ORDER

The defendants Equifax Inc., Equifax Information Services, LLC and

Equifax Mortgage Information Services have moved the Court for an order

enforcing the terms of a purported Settlement Agreement and for a Stay of All

Deadlines, and the Court having been advised of the views of the parties, the said

Motions are hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE